Kenneth Wayne BLEDSOE, Appellant,

v.

The STATE of Texas, Appellee.

No. 71–89.

Court of Criminal Appeals of Texas,
En Banc.

June 6, 1990.

James M. Leitner, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Carol M. Cameron and Mark Vinson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

PER CURIAM.

A jury convicted appellant of aggravated robbery, enhanced, and assessed punishment at life imprisonment. The conviction was affirmed. *Bledsoe v. State*, 754 S.W.2d 331 (Tex.App.—Houston [14th] 1988). Appellant petitioned this Court for review claiming that the Court of Appeals erred in holding that submission of the parole charge under Art. 37.07, Sec. 4, V.A. C.C.P., did not constitute egregious error. This Court remanded the case in an unpublished opinion for proceedings consistent with *Rose v. State*, 752 S.W.2d 529 (Tex.Cr. App.1988). *Bledsoe v. State*, 758 S.W.2d 786 (Tex.Cr.App.1988). On remand, the Court of Appeals found that appellant was not harmed by submission of the instruction to the jury. Appellant filed a second petition claiming that he was harmed. We granted the petition.

We have considered the issue presented by appellant and find that although we disagree with its reasoning,[1] the Court of Appeals reached the correct result. Therefore, appellant's petition for discretionary review is dismissed as having been improvidently granted.

McCORMICK, P.J., concurs.

TEAGUE, J., dissents.

CLINTON, Judge, dissenting.

This is a *"Rose harm"* case, in which the court of appeals conducted an analysis along lines of the leading opinion on rehearing in *Rose v. State*, 752 S.W.2d 529, at 552, 554–555 (Tex.Cr.App.1977–1978). *Bledsoe v. State*, 763 S.W.2d 482 (Tex.App. —Houston [14th] 1988).

Anticipating reexamination of treatment of *"Rose harm"* under Tex.R.App.Pro. 81(b)(2), this Court granted review primarily because we noticed in this cause a factor not mentioned in *Rose*, supra, and perforce

---

1. Harm determinations relevant to submission of the unconstitutional parole statute are now

governed by this Court's opinion in *Arnold v. State*, 786 S.W.2d 295 (Tex.Cr.App.1990).

not addressed in *Bledsoe,* supra, namely, a "jury note." See *Arnold et al. v. State,* 786 S.W.2d 295, at 304–05 (Tex.Cr.App. 1990). Today, however, the majority would have it that "although *we disagree with its reasoning* [footnoting *Arnold*], the Court of Appeals reached the correct result," and would dismiss his petition for discretionary review on a sheer *ipse dixit* that it was *"improvidently* granted." [1] Disposing of this cause with such a quaint oxymoron prompts this dissent.

At the outset two features in the trial of this cause must be kept in mind: appellant exercised his right to self-representation; he pleaded guilty by reason of "temporary insanity." Perhaps as a consequence there were flurries of pretrial motions, but voir dire examination was unremarkable and charges to the jury were given without objection; appellant not only pleaded "true" but also stipulated prior felony convictions (armed robbery and escape) in another state alleged for enhancement and presented no evidence on punishment; the charge instructed the jury to find "true" the enhancement paragraphs and also to assess punishment at confinement for not less that twentyfive years nor more than ninetynine years or life; the prosecution waived opening argument and appellant waived his right to argue.

In his closing argument the prosecutor began by reminding the jury that "the judge has given you the law in this case … here in this charge that you will again be allowed to take back with you for your deliberations," continued by ruling out minimum punishment and reprising the facts of the case and circumstances of the offense, and concluded with a plea for law enforcement by sending a message that includes a verdict of life, "so once he is released, he'll be too old to go and rob."

The jury deliberated for about an hour when its foreman sent out a note, *viz:*

Need clarification of paragraph concerning parole time. It states in part "… He will not become eligible for parole until the actual time served equals one-third of the sentence imposed or twenty years, whichever is less, without consideration of any good conduct time he may earn."

Does this mean that he will serve "⅓ of the sentence" irrespective of good time or whether the possibility of reduction in this ⅓ time is affected by good behavior? What is the difference between armed robbery and aggravated robbery?

To which the judge replied:

You are to *confine yourselves to the Court's charge.* I am not permitted to give you further clarification.

Twentyfive minutes later the jury returned its verdict.

Accordingly, this cause presents a singular situation: during the entire trial neither party mentioned parole law; it appears only in the § 4(a) instruction, immediately followed by a *Rose* "curative instruction." *Bledsoe,* supra, at 483. Yet, evident from its note is that the jury did notice those declarations of parole law and did ponder their meaning and effect. So, "manifestly the 'curative instruction' failed to accomplish its purpose, and loses its value as a probative factor" in a *"Rose* harm" analysis. *Arnold,* at 311. Therefore the "presumption" invoked by the court of appeals, *Bledsoe,* at 483, is unavailing.

Likewise, that a reviewing court regards "the facts of the instant offense" as a telling factor is of little moment, for " 'heinousness' is a slippery indicator for gauging how a jury evaluated conduct of [defendant] in assessing punishment, [so] to find the facts are so aggravated that the punishment is appropriate is simply not a satisfactory conclusion." *Arnold,* at 311–312 and n. 24. Similarly, that a prior criminal record may be viewed as contributing to punishment does not establish beyond a reasonable doubt that an erroneously given instruction made no contribution to the punishment actually assessed by the jury. *Arnold,* at 312.

By citing *Arnold* to govern determinations of *"Rose* harm," the majority at once disavows all *ratio decidendi* of the court of appeals but inexplicably approves the

---

**1.** All emphasis is mine throughout unless otherwise noted.

**638**

result that *Arnold* teaches may well be incorrect in this significant situation. *Id.,* at 305 (such an important factor in harm analysis cannot be easily dismissed; reasons for finding no risk of extraneous considerations must be more than a subjective view of an offense and prior criminal record).

In my view, then, our grant of review was not at all improvident, rather it was forseeing and providing for the future. Thus, I dissent to dismissing appellant's petition.

MILLER and CAMPBELL, JJ., join in this opinion.